UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-14-GWU

RICKEY L. NEAL,                                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

**INTRODUCTION**

Rickey Neal brought this action to obtain judicial review of an unfavorable

administrative decision on his applications for Disability Insurance Benefits (DIB)

and Supplemental Security Income (SSI).  The case is before the court on cross-

motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity?
     If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful
     activity, does he have any "severe" impairment or combination
     of impairments--i.e., any impairments significantly limiting his
     physical or mental ability to do basic work activities?  If not, a
     finding of non-disability is made and the claim is denied.

09-14  Rickey L. Neal

3.      The third step requires the Commissioner to determine
        whether the claimant's severe impairment(s) or combination of
        impairments meets or equals in severity an impairment listed
        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of
        Impairments).  If so, disability is conclusively presumed and
        benefits are awarded.

4.      At the fourth step the Commissioner must determine whether
        the claimant retains the residual functional capacity to perform
        the physical and mental demands of his past relevant work.  If
        so, the claimant is not disabled and the claim is denied.  If the
        plaintiff carries this burden, a prima facie case of disability is
        established.

5.      If the plaintiff has carried his burden of proof through the first
        four steps, at the fifth step the burden shifts to the
        Commissioner to show that the claimant can perform any other
        substantial gainful activity which exists in the national
        economy, considering his residual functional capacity, age,
        education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

        Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

2

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

09-14  Rickey L. Neal

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

09-14  Rickey L. Neal

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Neal, a 42-year-old former heavy equipment operator with a "limited" education, suffered from impairments related to pain in the cervical, thoracic and lumbosacral spine,  the left shoulder, left hip, head and bilateral hands, depression, gout and diabetes mellitus.  (Tr. 9, 14).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 13-14).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 15-16).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 16).

Neal filed his current applications of DIB and SSI on September 26, 2006 and March 8, 2007.  (Tr. 6).  The claimant alleged a disability onset date of August 6, 2002.  (Tr. 102).   A prior ALJ  issued a final denial decision on the plaintiff's earlier claims for DIB and SSI on April 28, 2006.  (Tr. 6, 45-54).  The current ALJ declined to reopen these applications.  (Tr. 6).  Neal's DIB-insured status expired on December 31, 2007.  (Id.).  Thus, the pertinent time frame for consideration of

the plaintiff's DIB claim runs from April 29, 2006 through December 31, 2007.  With regard to the time period regarding his SSI, claim, the proper inquiry is whether the claimant was disabled on or after the application date.  Casey v. Secretary of Health and Human Services, 987 F.3d 1230, 1233 (6th Cir. 1993).  Therefore, the relevant time period concerning the SSI claim runs from the March 8, 2007 filing date through the August 22, 2008 date of the current denial decision.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The ALJ relied upon the hearing testimony obtained during the processing of Neal's earlier Social Security disability claim.  The hypothetical question included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) the need for a sit/stand option in 30 to 60 minute intervals; (2) an inability to more than occasionally bend; (3) a limitation to work involving simple, routine tasks not requiring extended periods of concentration; and (4) a limitation to a low stress work environment with reduced contact with the general public and co-workers.  (Tr. 49, 54).  In response, a significant number of jobs were identified as remaining available.[1]  (Tr. 54).  Therefore, assuming that this

---

[1]The vocational expert testimony relied upon by the ALJ came from the plaintiff's hearing during the processing of his earlier Social Security disability claim.  (Tr. 15).  The hearing testimony was omitted from the current record although it was extensively

09-14  Rickey L. Neal

question fairly characterized Neal's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error.  Neal was found capable of performing a restricted range of light level work in the administrative decision which became final on April 28, 2006.  (Tr. 45-54).  Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application.  Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997).  Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . ."  The ALJ's findings of a restricted range of light level work is in accord with these directives.

Dr. Mark Burns examined Neal in November of 2006 and concluded that the physical examination was within normal limits.  (Tr. 409).  No restriction was found upon orthopedic examination.  (Id.).  Dr. Burns opined that the plaintiff has no

---

quoted in the prior ALJ's denial decision.  The undersigned has had to cite the prior ALJ rather than the hearing testimony directly.  The claimant has not objected to the omission of this evidence from the current record and, so, the undersigned finds any error to be harmless.

restriction with regard to sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking and traveling. (Id.). This report does not suggest deterioration in the claimant's condition since the prior denial decision and, so, provides strong support for the current administrative decision. More severe physical restrictions than those found by the ALJ were not reported by such treating and examining sources as the staff at the University of Kentucky North Fork Valley Community Health Center (Tr. 992-1003), the staff at the University of Kentucky Family Practice Center (Tr. 1022-1048, 1497-1504), the staff at the Hazard Appalachian Regional Hospital (Tr. 1049-1050, 1061-1069), and the staff at Hazard Radiology Associates (Tr. 1176-1181). A CT scan of the lumbar spine obtained at Hazard Radiology in January of 2007 revealed no evidence of fracture or destructive lesion. (Tr. 1177). Only mild bulging was reported at L3-L4, L4-L5, and L5-S1 with mild stenosis observed. (Id.). A CT scan of the thoracic spine showed signs of old anterior compression of the T10, T11 and T12 vertebral bodies with no sign of acute fracture. (Tr. 1176). A CT scan of the head from October, 2006 revealed no acute hemorrhage or infarction. (Tr. 1178). Therefore, these reports provide substantial evidence to support the administrative decision.

Dr. George Chaney, Neal's treating physician, opined that the plaintiff would be limited to less than a full range of sedentary level work in an April, 2008 assessment. (Tr. 1051-1056). The claimant asserts that the ALJ erred by rejecting

this opinion as binding.  However, the ALJ cited a number of good reasons for this finding.  The ALJ noted that the doctor's restrictions were little changed from those submitted during the processing of the previous application and there was no evidence that his condition had significantly changed.  (Tr. 15).  The evidence submitted was largely duplicative of that previously submitted and did not indicate a deterioration in his condition.  (Id.).  The ALJ reported that the plaintiff had noted in August of 2007 that his new medications were helping his condition.  (Tr. 15, 1023).  The court notes that Dr. Chaney repeatedly indicated that the claimant's muscle strength and reflexes were intact.  (Tr. 212, 215, 218, 227, 230, 235, 240, 244, 967, 970, 974, 978, 982, 989, 1006, 1009, 1013, 1017, 1076, 1083, 1088, 1093, 1097, 1100, 1103, 1115, 1119, 1133).  Under these circumstances, the undersigned concludes that the ALJ properly rejected Dr. Chaney's opinion.

Neal also argues that the ALJ erred by rejecting the opinion of Dr. James Owen.  Dr. Owen examined the plaintiff in March of 2004 and restricted him to less than a full range of sedentary level work.  (Tr. 462-470).  However, this opinion would be offset by that of Dr. Burns who was also a one-time examiner. Furthermore, this opinion was dated from a time before the relevant time period. Therefore, the court must reject the claimant's argument.

The ALJ also dealt properly with the evidence of record relating to Neal's mental condition.  Psychologist Robert Fitz examined the plaintiff in October of 2006

and diagnosed an adjustment disorder with depressed mood.  (Tr. 195).   The claimant's Global Assessment of Functioning (GAF) was rated at 65.  (Id.).  Such a GAF suggests the existence of only "mild psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.   Fitz opined that Neal would have a "fair" ability to sustain attention for simple repetitive tasks and to tolerate the stress and pressures of work activity.  (Tr. 195).  These limitations are essentially consistent with the mental restrictions found by the ALJ.  This report certainly does not suggest any deterioration in the plaintiff's mental condition since the previous administrative decision.

Psychologists Jane Brake and Edward Stodola each reviewed the record. Brake opined that Neal did not suffer from a "severe" mental impairment.  (Tr. 774). Stodola believed that the plaintiff did suffer from a "severe" mental impairment.  (Tr. 950).  However, the mental limitations identified by the reviewer, which included a "moderate" restriction concerning maintaining attention and concentration for extended time periods, interacting appropriately with the general public and responding appropriately to changes in the work setting, were all compatible with those found by the ALJ.  (Tr. 946-947).  Therefore, these reports also support the administrative decision.

09-14  Rickey L. Neal

Psychologist Tamara Knox examined Neal in July of 2007.  (Tr. 1495-1496).

Knox diagnosed a major depression and generalized anxiety.  (Tr. 1495).  The

examiner did not identify mental restrictions.

Psychologist Melissa Couch examined Neal in December of 2006.  (Tr. 412-

429, 1182-1199).  Couch  identified the existence of extremely severe mental

restrictions.  (Tr. 427-429, 1197-1199).  This opinion was offset by that the equally-

placed Fitz.  Therefore, the ALJ was free to reject it.

The undersigned concludes that the administrative decision should be

affirmed.  Therefore, the court must grant the defendant's summary judgment

motion and deny that of the plaintiff.  A separate judgment and order will be entered

simultaneously consistent with this opinion.

This the 8th day of March, 2010.


**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**

13